MJR

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M05-1428

- - - - - - - - - - - - - - - - -X

| | |
|---|---|
| UNITED STATES OF AMERICA | AFFIDAVIT IN SUPPORT OF ARREST WARRANT AND COMPLAINT |
| - against - | |
| WENDY ALMONTE, KERWIN CAPERS, JULIO ACOSTA, also known as "Gilberto Baez", CARMEN PIZARRO and ANA RAMOS, also known as "Jackie," | (21 U.S.C. §§ 963) |
| Defendants. | |

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

GERALD HANDLEY, being duly sworn, deposes and states that he is a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") duly appointed according to law and acting as such.

Upon information and belief, from in or about October 2002 to November 13, 2005, within the Eastern District of New York and elsewhere, the defendants WENDY ALMONTE, KERWIN CAPERS, JULIO ACOSTA, also known as "Gilberto Baez", CARMEN PIZARRO and ANA RAMOS, also known as "Jackie," did knowingly, intentionally and unlawfully conspire to import a controlled substance into the United States from a place outside thereof, which offense involved a substance containing MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952(a).

(21 U.S.C. §§ 963).



2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with ICE for approximately two years. My information in this case comes from a review of ICE records and conversations with other agents who are familiar with the matter.

2. On October 17, 2002, three individuals were stopped, questioned and searched at J.F.K. Airport in Queens, New York during a routine customs examination upon their return from Paris, France. During the course of this search, two of these individuals were found to be carrying a total of 17,941 MDMA pills. All three individuals were arrested and charged with conspiring to import MDMA into the United States. Subsequently, all three individuals pleaded guilty to charges of conspiring to import MDMA.

3. Subsequent to his/her arrest, one of these individuals ("CS") made statements to the government regarding his/her MDMA smuggling activities. CS stated, in sum and substance, that he/she had been recruited by "Wendy," who operated a billiards hall in the Washington Heights section of Manhattan, New York. CS further stated that he/she believed that "Wendy" also used an airline employee named "Kerwin" to smuggle narcotics into the United States. Subsequent

---

[1] Because the purpose of this Affidavit and Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3

investigation by ICE revealed "Wendy" and "Kerwin" to be WENDY ALMONTE ("ALMONTE") and KERWIN CAPERS ("CAPERS"). This investigation also revealed that ALMONTE operated a billiards hall in Washington Heights, while CAPERS worked as a flight attendant for Continental Airlines.

  4. On November 13, 2005, CAPERS arrived at Newark International Airport, Newark, New Jersey aboard Continental Flight 61 from Brussels, Belgium. Customs inspectors selected CAPERS for a border examination during which CAPERS became visibly nervous. An examination of CAPERS' suitcase yielded negative results. However, a patdown of CAPERS body revealed bulges around his thighs. CAPERS then removed his pants, which revealed that he was wearing bicycle shorts. An examination of the bicycle shorts revealed pills, which field-tested positive for the presence of MDMA. Approximately 16,975 MDMA pills were recovered from CAPERS' bicycle shorts.

  5. CAPERS was arrested and advised of his Miranda rights, which he waived. CAPERS informed the interviewing ICE agents that he was smuggling the MDMA on behalf of ALMONTE and that he was supposed to deliver the MDMA to her in the Bronx, New York. CAPERS claimed he was to receive approximately $8,000 for this smuggling trip. CAPERS further stated that ALMONTE had provided him with her telephone number, (216) 543-2281, and that ALMONTE instructed him to call her upon his arrival in the United States. CAPERS agreed to make a monitored telephone call to ALMONTE at the telephone number she had provided.

4

6. During the monitored telephone call, ALMONTE advised CAPERS that she was in Cleveland, Ohio, but that she should contact "Jackie" at (917) 968-8059 in order to arrange for delivery of the pills and to receive payment for the trip. CAPERS advised the arresting agents that he had smuggled MDMA pills for ALMONTE in September 2005 and that on that occasion he had delivered the MDMA pills to "Jackie," later identified as ANA RAMOS ("RAMOS"), at an address on Tiebout Avenue in the Bronx, New York.

7. CAPERS agreed to participate in a controlled delivery involving sham MDMA pills to RAMOS' apartment, which was identified 2347 Tiebout Avenue, Bronx, New York. Upon arrival at this location, CAPERS was met outside by CARMEN PIZARRO ("PIZARRO"). PIZARRO proceeded to escort CAPERS into the building, heading to Apartment 4D. While on the elevator heading to the apartment, PIZARRO asked if there were any problems, to which CAPERS responded in the negative.

8. CAPERS entered Apartment 4D, where he and PIZARRO were met by RAMOS and JULIO ACOSTA, also known as "Gilberto Baez" ("ACOSTA").[2/] CAPERS gave RAMOS a bag containing the bicycle shorts, which were filled with the sham MDMA. Both RAMOS and PIZARRO [handwritten, replacing ACOSTA] inspected the MDMA filled bag. After the examination was complete, RAMOS gave $2,000 to CAPERS as partial payment for his

---

[2/] After his arrest, ACOSTA refused to provide ICE agents with identifying information. A fingerprint check has linked the ACOSTA and Baez names with this defendant. The investigation into this defendant's true identity continues.

5

work. PIZARRO translated the meeting from Spanish to English for CAPERS. After receiving the payment, CAPERS left the apartment.

9. After CAPERS left the apartment, agents stationed themselves in the hallway outside the apartment door. While outside the apartment, agents could hear ACOSTA argue with one of the females in the apartment. Agents then dialed RAMOS' phone and could hear it ringing inside the apartment.

10. At this time, ICE agents knocked on the door, identified themselves as police, and were granted access to the apartment by RAMOS. Agents secured the apartment and identified the three individuals present within as ACOSTA, PIZARRO and RAMOS.

11. ICE agents obtained consent to search the apartment from RAMOS and discovered the sham MDMA under RAMOS' bed. Agents also discovered scales and $2,000, among other things. Agents also recovered two cellular telephones belonging to RAMOS and PIZARRO. During the consent search of the apartment, these two telephones rang. The number that appeared on the telephones' caller identification feature indicated that the incoming call was from (216) 543-2281, which is the same number that CAPERS used to call ALMONTE in Cleveland. Additionally, the caller identification on these telephones showed that the incoming call was from "Wendy" or "Wendi."

6

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for WENDY ALMONTE, and that defendants KERWIN CAPERS, JULIO ACOSTA, also known as "Gilberto Baez", CARMEN PIZARRO and ANA RAMOS, also known as "Jackie," be dealt with according to law.

GERALD HANDLEY
Special Agent
Immigration and
Customs Enforcement

Sworn to before me this
14th day of November, 2005

UN
EASTERN DISTRICT OF NEW YORK